FRANCES MAHER, as Administratrix, etc., of WILLIAM MAHER, Deceased, Respondent, *v.* BUFFALO, ROCHESTER AND PITTSBURGH RAILWAY COMPANY, Appellant.

Fourth Department, June 29, 1926.

Negligence — action for death of plaintiff's intestate who was killed when telephone pole on which he was working broke — defendant knew that pole was in decayed condition — liability of defendant may be predicated on failure to take reasonable precautions to make pole safe or failure to notify decedent of condition of pole — nonsuit properly denied where it is shown that defendant did nothing to make pole safe — evidence — cross-examination — fellow-workman not having been directly examined as to alleged warning given by defendant could not be cross-examined thereon — warning given by defendant to fellow-workman of decedent properly excluded in absence of proof that decedent received it — plaintiff's witness in rebuttal was asked if defendant warned him — error to exclude on cross-examination question whether plaintiff's witness did not advise decedent as to condition of pole — verdict as to contributory negligence not against weight of evidence — instructions — error to refuse certain requests by defendant.

In an action to recover for the death of plaintiff's intestate who was killed when a telephone pole, under the control of the defendant, on which decedent was working, broke and fell, it appears that the defendant knew of the decayed condition of the pole. Under the circumstances, it was the duty of the defendant in reference to the decedent, who was invited to work on the pole, to use ordinary and usual precautions to make the pole safe for the use to which it knew it was to be put by the decedent, or at least it was bound to warn decedent of the condition of the pole, and, therefore, negligence on the part of the defendant may be predicated on the fact that it did not use ordinary and usual precautions to make the pole safe. Hence, the mere fact that there was no proof that the defendant did not warn the decedent does not entitle the defendant to a nonsuit.

One of plaintiff's witnesses, who was not examined directly on the question of whether a warning was given by the defendant, could not be cross-examined on that question and it was not error for the court to refuse the defendant the right to so cross-examine.

The defendant did not have the right to introduce testimony by one of its witnesses that the witness warned a fellow-servant of the decedent and instructed him to warn the decedent of the condition of the pole in the absence of any evidence to show that the warning was brought home to the decedent, and the mere fact that defendant's witness saw decedent's fellow-workman go immediately to the decedent but did not hear what he said, is not sufficient to show that the fellow-workman warned the decedent.

Since one of plaintiff's witnesses in rebuttal was asked whether defendant's servant or anybody else had said anything with reference to the pole in question and had answered "No," it was error for the court to deny the defendant the right to ask that witness on cross-examination if he did not tell decedent in words or substance to look out for the pole that broke.

The verdict on the question of contributory negligence was not against the weight of the evidence.

Evidence having been introduced to the effect that the decedent before climbing the pole made certain tests and as to the place where the pole was decayed, it was error for the court, having charged that the decedent was required to exercise reasonable care in climbing the pole, to refuse to charge, at defendant's request, that if the jury found from all the evidence that the tests, naming them, would, if made, have revealed the rotten condition of the pole to such an extent as to make it likely to fall, the decedent was guilty of contributory negligence, and to refuse to charge, at defendant's request, that if the jury find that the tests, if made, would have satisfied decedent of the rotten and defective condition of the pole, that the jury might then find that he was guilty of contributory negligence in climbing the pole.

The court having stated the general rule applicable to the decedent's conduct, the defendant had the right to have the court apply the rule to the facts of the case as the defendant claimed them to be, and as the evidence would justify the jury in finding.

APPEAL by the defendant, Buffalo, Rochester and Pittsburgh Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 8th day of June, 1925, upon the verdict of a jury for $30,000.

*Havens, Mann, Strang & Whipple* [*James Mann* of counsel], for the appellant.

*John J. McInerney,* for the respondent.

CROUCH, J.　For some years prior to June 10, 1922, defendant owned and maintained a private telephone cable, supported upon a line of poles owned by the Rochester Gas and Electric Company, set in the towpath of the Erie canal.　A few days prior to June 10, 1922, defendant contracted with the Wheeler-Green Company of Rochester to remove the cable.　Three employees, of whom deceased was one, were sent by that company, and began the work of removal on the morning of June tenth.　Early in the afternoon, deceased went up one of the poles to a height of thirty-five feet, strapped his life-belt around it, began to remove the cable, and while working leaned out two or three feet from the pole.　When the cable was removed, the pole, which was rotten at the base, fell, carrying deceased to his death.

The complaint in substance charged defendant with negligence in knowingly maintaining the pole in a decayed and rotten condition, and in failing either to warn the deceased of that condition, or to take proper and necessary precautions to remedy it and to make the pole more secure and safe for the work which it invited deceased to do thereon.

The answer admits that death was caused by the falling of the pole, which was in a decayed and rotten condition, and admits that defendant had notice of such condition; denies the negligence

charged, and affirmatively alleges contributory negligence. Plaintiff had a verdict, and defendant appeals.

1. Appellant contends that the refusal to nonsuit for failure to prove negligence was error; and, in connection with that contention, urges as error certain rulings on evidence. We think the contention is without merit. It rests upon the assumption that under the circumstances of this case, there was no actionable negligence on the part of defendant in maintaining its structure on a rotten pole, or in failing to inspect the pole to determine its condition or in continuing to maintain it after it became aware of the defective condition. Appellant's position is that since the deceased was an experienced workman, aware generally of the hazards inherent in his occupation, actionable negligence on the part of defendant could occur only if it concealed from the deceased the knowledge which it had of the defective condition of the pole, or at least failed in its duty to warn him. In other words, appellant says that the only ground of negligence upon which plaintiff here could stand, was defendant's failure to give warning of the unsafe and dangerous condition of the pole. It then says that no evidence was given on the part of plaintiff of a failure to warn, and hence that an essential element of the only actionable negligence pleaded was lacking.

Assuming it to have been true that deceased was an experienced man engaged in hazardous work, that fact does not change the nature of the duty which was owing by defendant to deceased. It was merely one of the circumstances in the case to be considered with all others, in determining whether defendant did or did not discharge the duty of care which it owed.

Defendant admits that it knew the pole was in a rotten and dangerous condition. It was, therefore, bound to anticipate that harm might result to the deceased, whom it had invited to go on the pole. Being bound to anticipate harm, it was likewise bound to use reasonable care to avert such harm. Reasonable care would have been shown if defendant had taken ordinary and usual precautions to make the pole safe for the use to which it knew it was to be put. Reasonable care also, perhaps, would have been shown had it warned the deceased of the condition of the pole, so that he might either have refused to work on it, or himself have taken steps to render it safe. The failure to do either the one or the other was negligence. By omitting proof of failure to warn, plaintiff in effect abandoned that ground of negligence, and relied solely upon the other ground.

Bearing in mind the foregoing situation, the rulings on evidence, criticized in this connection, will be found to have been correct. It was the claim of defendant that it had told the witness Conheady,

a fellow-workman of deceased, that the pole in question was in a dangerous condition, instructing him to so inform the deceased, and that Conheady had done so.   Upon the cross-examination of Conheady, defendant sought to show those facts.   The court rightly ruled that since, on Conheady's direct examination, no questions had been asked tending to show failure to warn, the questions put by defendant to Conheady related to matters of defense, and did not constitute proper cross-examination.

Defendant's witness Moore is the man who was said to have warned Conheady and instructed him to warn the deceased. Defendant sought to prove by Moore what was said to Conheady on the subject; the court refused to allow it unless it was brought home to the deceased.   Defendant's counsel frankly admitted that he could not bring it home directly, but asserted that he could do so circumstantially.   The circumstances proposed to be shown were that after Moore spoke with Conheady, Conheady at once walked to where deceased was, and said something to him.   This was hardly enough, for there were other circumstances disclosed by the evidence tending to show that when Conheady spoke to the deceased, it might have been with reference to an entirely different matter.   Clearly the jury could do nothing but guess at what Conheady said to the deceased.

2. Later in the case Conheady was called as a witness by plaintiff in rebuttal.   He was asked whether Moore or anybody else had said anything with reference to the pole in question.   His answer was " No."   On cross-examination he testified that at a certain specified time he had walked over to where the deceased was, and had conveyed a message to him.   The deceased, at the time the message was given to him, was on another pole.   He immediately came down from that pole, and walked away in a westerly direction, that is, away from the fatal pole, known in the case as pole " E." Defendant's counsel then put this question to him: " Didn't you tell Mr. Maher in words or in substance to look out for Pole ' E,' that it was bad? "   An objection thereto was sustained on the ground that it was not proper cross-examination.   This ruling was too strict.   Having denied on direct examination that Moore had said anything to him about pole E, it was proper, as tending to test the truth of that statement, to ask whether he had, immediately after the time claimed, spoken to the deceased with reference to pole E, and told him to look out for it.

3. While we are of opinion that the verdict as to contributory negligence was not against the weight of the evidence, exceptions to rulings by the learned trial judge on two requests to charge in connection with that subject present a serious question.

There was evidence on behalf of plaintiff tending to show that the deceased, before climbing the pole, had tested it out by prodding it at or about the ground level with a twelve-inch screw driver, having a blade eight inches long; also, by sticking in his climbing spurs; and further, when he had gone up ten feet, by attempting to sway it; and that those were the usual and customary tests made by men in that line of business. Plaintiff had also adduced evidence tending to show that the rotten part of the pole, where the break occurred, was from a foot to eighteen inches below the ground level, and hence that the customary tests failed to reveal the dangerous condition. On the other hand, there was evidence on behalf of defendant tending to show that the pole broke at the ground level and that its rotten condition at that point was such that deceased must necessarily have discovered it, had he made the tests as claimed.

In the body of his charge, the trial judge, after stating the respective claims of the parties on the question of contributory negligence, said: " Maher [deceased] was required to exercise reasonable care in climbing this pole, that is, the care that an ordinary, careful and prudent person in his line of work would exercise under the circumstances. Whether or not he exercised that care is a question of fact for you to determine. The law requires that he shall exercise ordinary care for his safety, and it is for you to say as a fact under all the evidence whether or not he did so."

At the close of the charge, counsel for defendant made the following requests:

(a) " Mr. Mann: I ask Your Honor also to charge that if the jury find from all the evidence, direct and circumstantial, that the tests, the screw driver test, the swaying test, the spur test, as testified to by plaintiff's witnesses, would, *if made*, have revealed the rotten condition of the pole to such an extent as to make it likely to fall, the deceased was guilty of contributory negligence."

(b) " Mr. Mann: * * * I ask the court to charge that if the jury finds that the tests, if made, would have satisfied Mr. Maher of the rotten and defective condition of the pole, that they *may* then find that he was guilty of contributory negligence in ascending."

The requests were denied for the stated reason that they were incomplete in that they left out of consideration the rule according to which the negligence of deceased was to be measured.

We think the exceptions to the refusals to charge as requested present reversible error. A statement of the general rule by which the acts of deceased were to be measured had just been given to the jury and had been accepted as correct by defendant. The requests were simply for an application of the rule to the facts of

the case as defendant claimed them to be.   There was evidence which would warrant the jury in finding such facts.   Under such circumstances the requests should have been granted.   (*Perel* v. *N. Y. Rys. Co.*, 185 App. Div. 111; 14 R. C. L. 799.)   Under the facts, upon the finding of which request (a) was conditioned, to do what the deceased did was negligent as matter of law.   Yet the jurors, by the refusal to charge, were in effect told that they were at liberty in their discretion to find otherwise.   We have no means of knowing that they did not do so.   The error in the denial of request (b) seems equally plain.   The requested rulings concerned the vital point of the defense.   The exceptions are substantial and may not be disregarded.

The judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

CLARK, DAVIS, SEARS and TAYLOR, JJ., concur.

Judgment reversed on the law and new trial granted, with costs to appellant to abide the event.